

**FILED**

Sep 24 2015, 9:00 am

CLERK
of the supreme court,
court of appeals and
tax court

| ATTORNEY FOR APPELLANT | ATTORNEY FOR APPELLEE |
| --- | --- |
| Michael L. Schultz | Howard Howe |
| Parr Richey Obremskey | Indianapolis, Indiana |
| Indianapolis, Indiana | |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
| --- | --- |
| Douglas L. Krasnoff, | September 24, 2015 |
| *Appellant,* | Court of Appeals Case No. 49A04-1501-CC-3 |
| v. | Appeal from the Marion Superior Court |
| The Education Resources Institute, | The Honorable John F. Hanley, Judge |
| *Appellee* | Trial Court Cause No. 49D11-0408-CC-1450 |

**Bailey, Judge.**

## Case Summary

[1]     The Education Resources Institute ("TERI") filed suit against Douglas L. Krasnoff ("Krasnoff"), alleging that Krasnoff had defaulted on a promissory note to pay a student loan from 1994 ("the Note"). During the pendency of the

litigation, TERI and Krasnoff entered into an agreement ("the Agreement") for repayment of the debt.

[2] At bench trials, TERI pursued two theories against Krasnoff: failure to pay the underlying debt, and failure to comply with the Agreement. The first trial resulted in judgment for Krasnoff; in an unpublished memorandum decision, this Court reversed the judgment and remanded for a new trial. *TERI v. Krasnoff*, No. 49A02-1007-CC-899, slip op. at 1-2 (Ind. Ct. App. Aug. 15, 2011) [hereinafter *TERI I*], *trans. denied*. At the second bench trial, judgment was entered for TERI and against Krasnoff. Krasnoff now appeals.

[3] We affirm.

# Issue

[4] Krasnoff presents two issues for our review, which we consolidate and restate as a single issue: whether, after filing for bankruptcy and conveying the Note to a successor entity, TERI was a proper plaintiff under Indiana's standing doctrine and true party in interest rules.

# Facts and Procedural History

[5] As we did in the prior appeal, we again note that we lack TERI's complaint. *See TERI I*, slip op. at 1. We remind the parties that the allegations in the complaint are frequently "necessary for the Court to decide the issues presented," Ind. Appellate Rule 50(A)(1), and that noncompliance with our

Appellate Rules can result in waiver of an appeal. *Erwin v. Roe*, 928 N.E.2d 609, 613 n.2 (Ind. Ct. App. 2010). We find the omission of the complaint particularly distressing because this is the *second* appeal from a second entry of judgment in this case.

[6] On May 10, 1994, Krasnoff signed a promissory note for a private student loan from Society National Bank. The total principal value of the loan was $10,500. Ex. 1. At some point, the promissory note was transferred to TERI. Subsequent to that:

> On August 6, 2004, TERI filed a complaint in the Marion Superior Court for collection of a debt allegedly owed by Krasnoff. On July 13, 2009, the parties, through counsel, allegedly executed an agreement regarding payment of the debt in lieu of entry of judgment.

> On January 11, 2010, a bench trial was scheduled in the matter for June 29, 2010. At the trial, TERI submitted as its sole evidence an affidavit of its counsel, Howard Howe ("Howe"), averring that Krasnoff's outstanding debt to TERI, inclusive of principal and interest, amounted to $11,623.73, and that Howe's own fees in the matter greatly exceeded $1,500. In support of Howe's affidavit was a copy of an executed "Agreement of the Parties," which bore the signature of Krasnoff's attorney and was purportedly a settlement agreement between TERI and Krasnoff which TERI claimed evidenced the debt and the settlement agreement.

> Krasnoff objected to the introduction of the affidavit and the settlement agreement, arguing that these were inadmissible as hearsay, testimony by counsel, and an attempt to introduce evidence of settlement negotiations as evidence of liability. The

trial court sustained Krasnoff's objection, observing that "Well it occurs to me Mr. Howe; you're trying to take the short cut route to your destination. If you had a representative of Plaintiff present who could testify that would certainly simplify matters." (Tr. 12.) TERI rested its case without introducing any additional evidence, and Krasnoff moved for involuntary dismissal of TERI's action under Trial Rule 41(B). The trial court took Krasnoff's motion under advisement and adjourned.

On June 30, 2010, the trial court granted Krasnoff's motion for involuntary dismissal. On July 20, 2010, the trial court entered judgment for Krasnoff.

*TERI I*, slip op. at 1-2.

[7] On appeal, we reversed the trial court's judgment, concluding that the Agreement was a verbal act, and thus was neither hearsay under Evidence Rule 801 nor a statement made during compromise negotiations otherwise barred from admission under Evidence Rule 408. *Id.*, Slip Op. at 3-4. We expressly noted that the Agreement was not necessarily evidence of Krasnoff's liability on the original note, but that it was an agreement under which Krasnoff conceded his obligation to make payments to TERI. *Id.* We reversed and remanded the matter to the trial court at that time.

[8] In 2010, during the pendency of the litigation, TERI entered into bankruptcy in the U.S. Bankruptcy Court for the District of Massachusetts. Ex. 9. On March 9, 2012—after this Court's decision in *TERI I*—TERI executed an allonge of endorsement and agreement of assignment ("the Assignment"), which transferred the Note to a successor entity, TERI Plan Trust, LLC ("the Trust").

[9] A new trial was conducted on July 22, 2014. At the trial, TERI produced as a witness Jennifer Traveis ("Traveis"), an employee of Boston Portfolio Advisors, which managed collection of debts for the Trust. Traveis testified as to the status of Krasnoff's payments on the Note, the total principal and interest amounts outstanding on the Note, the total costs of litigation to enforce the Note, and the chain of transfer of the Note to the Trust. Krasnoff objected to substantial portions of Traveis's testimony, as well as to the admission of the Agreement and the Assignment. The trial court admitted the Agreement and the Assignment into evidence, and admitted into evidence substantial portions of Traveis's testimony. Krasnoff's argument at trial was not that he did not owe amounts on the Note; rather, Krasnoff argued that after the transfer of the Note to the Trust, TERI was no longer a party entitled to enforce the Note, and thus lacked standing and was not a proper party to the litigation.

[10] On October 20, 2014, the trial court issued findings and conclusions. The trial court rejected Krasnoff's argument. The court instead found that TERI was entitled to enforce the Note and was entitled to enforce the Agreement, under either of which Krasnoff was liable. Accordingly, the trial court entered judgment against Krasnoff and found that he owed a total of $13,952.66: principal totaling $10,588.73, accrued interest of $1,379.06, and court costs totaling $1,984.86. App'x at 13-14.

[11] On November 17, 2014, Krasnoff filed a motion to correct error. The trial court denied Krasnoff's motion.

This appeal followed.

# Discussion and Decision

## Standard of Review

Krasnoff appeals the trial court's denial of his motion to correct error. We review a trial court's ruling on a motion to correct error for an abuse of discretion, which occurs when the ruling is contrary to the logic and effect of the facts and circumstances before the court, or when the court errs on a matter of law. *City of Indianapolis v. Hicks*, 932 N.E.2d 227, 230 (Ind. Ct. App. 2010), *trans. denied*.

Krasnoff's motion to correct error challenged the trial court's findings of fact, conclusions thereon, and judgment. Krasnoff filed a written motion requesting special findings pursuant to Trial Rule 52. Our standard of review in such cases is well settled.

> Special findings are those that contain all facts necessary for recovery by a party in whose favor conclusions of law are found. The findings are adequate if they support a valid legal basis for the trial court's decision. The purpose of special findings of fact is to provide a reviewing court with the theory on which the judge decided the case, so they should contain a statement of the ultimate facts from which the trial court determined the legal rights of the parties. On appeal, we construe the findings together liberally in support of the judgment. But in our review of whether findings support the judgment, we may not add anything to the findings of fact by way of presumption, inference, or intendment.

*Indiana High Sch. Athletic Ass'n, Inc. v. Schafer*, 913 N.E.2d 789, 794 (Ind. Ct. App. 2009) (citations omitted).

[15] Krasnoff presents arguments related to TERI's standing to pursue its claims, drawing our attention specifically to questions concerning the interpretation of the Agreement, the Note, and the Assignment, as well as Indiana's Uniform Commercial Code and our trial rules. These present legal issues concerning the construction of contractual and statutory provisions, which we review *de novo*. *Ballard v. Lewis*, 8 N.E.3d 190, 193 (Ind. 2014).

# Analysis

[16] Krasnoff argues that as a result of the Assignment, TERI was no longer entitled to enforce the Note under the Indiana U.C.C. Krasnoff contends that TERI assigned its rights under both the Note and the Agreement to the Trust; as a result, TERI was not a real party in interest in the case, and could not pursue its suit against Krasnoff. Krasnoff also contends that TERI lacked standing to pursue its claim against him.

[17] Standing and the real party in interest rule are separate concepts. *Hammes v. Brumley*, 659 N.E.2d 1021, 1029 (Ind. 1995). "Standing refers to the question of whether a party has an actual demonstrable injury for purposes of a lawsuit." *Id.* "A real party in interest, on the other hand, is the person who is the true owner of the right sought to be enforced." *Id.* at 1030. The real party in interest "is entitled to the fruits of the action." *Id.*

[18] A party with standing and a real party in interest are not necessarily one and the same. Thus, in *Hammes*, the Indiana Supreme Court observed that in the wake of a Chapter 7 bankruptcy, "the bankrupt parties were not real parties in interest; the trustees of their respective bankruptcy estates were." *Id.* Nevertheless, the bankrupt parties "did have standing to sue" because "[t]hey were parties that had a demonstrable injury allegedly caused by the parties they were suing and sustained a 'direct injury as a result of the conduct at issue'—the threshold requirement to show standing." *Id.*

[19] Here, there is ample evidence that TERI had standing to pursue its claim. When TERI filed suit, it was the holder of the Note, the payment requirements of which TERI alleged Krasnoff had breached. TERI remained holder of the note until execution of the Assignment in 2012, incurring upon itself the cost of litigation beginning in 2004, and including a bench trial in 2010 and a subsequent appeal in 2011. TERI cannot, then, be said to lack standing as a party to the litigation.

[20] We turn, then, to the question of whether TERI qualified as a real party in interest. Our trial rules require that "[e]very action shall be prosecuted in the name of the real party in interest." Ind. Trial Rule 17(a). However:

> No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time after objection has been allowed for the real party in interest to ratify the action, or to be joined or substituted in the action. Such ratification, joinder, or substitution shall have

the same effect as if the action had been commenced initially in the name of the real party in interest.

*Id.* There is no specific procedure set forth in our trial rules for when and how a challenge under Rule 17(a) may be brought, nor for when and how such a challenge may be addressed, and this parallels the federal rule. *See* 6A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1554 (3d ed. 2015) (discussing Fed. R. Civ. P. 17).

[21] Arguing that TERI is not a real party in interest, Krasnoff observes that the Note was transferred from TERI to the Trust as a result of the Assignment, and draws our attention to the "person entitled to enforce" provision of the Indiana U.C.C., which states:

> "Person entitled to enforce" an instrument means:
>
> (1)     the holder of the instrument;
>
> (2)     a nonholder in possession of the instrument who has the rights of a holder; or
>
> (3)     a person not in possession of the instrument who is entitled to enforce the instrument under I.C. 26-1-3.1-309 or I.C. 26-1-3.1-418(d).
>
> A person may be a person entitled to enforce the instrument even though the person is not the owner of the instrument or is in wrongful possession of the instrument.

I.C. § 26-1-3.1-301.

[22] TERI transferred its rights under the Note, as well as possession of the Note itself, to the Trust; thus, TERI was not a person entitled to enforce under Subsections 26-1-3.1-301(1) and (2). Nor was TERI entitled to enforce the Note under Subsection 26-1-3.1-301(3). Section 26-1-3.1-309 applies to those parties entitled to enforce an instrument but who lost possession of the instrument outside of "a transfer … or lawful seizure," I.C. § 26-1-3.1-309(a)(2); because of the Assignment, this provision did not apply to render TERI a person entitled to enforce the Note. Nor did Subsection 26-1-3.1-418(d) work to make TERI a person entitled to enforce the Note; that subsection applies in situations involving payment or acceptance of an instrument by mistake, or when acceptance of an instrument has been revoked. Krasnoff is correct, then, that TERI was not a person entitled to enforce the Note as contemplated by the U.C.C.

[23] But that does not end the inquiry under Trial Rule 17(a), which provides that a party that is not a real party in interest may nevertheless pursue a claim where the real party in interest ratifies, joins, or is substituted into the action. It is with respect to Rule 17(a) that Krasnoff's argument fails.

[24] At trial, Krasnoff argued that TERI lacked standing and was not a true party in interest. TERI produced testimony from Jennifer Traveis, through whose testimony information and exhibits came into evidence concerning Krasnoff's non-payment on the Note. Traveis's testimony included her statements that she was an employee of Boston Portfolio Advisors, which had been retained by the Trust to manage the collection of promissory notes transferred to the Trust in

the wake of TERI's bankruptcy. Traveis produced the Note and the Assignment. Traveis also testified as to the extent of the work of TERI's counsel in the case and the fees associated with the prior appeal. Put another way: Traveis, serving as a representative of the Trust, testified on TERI's behalf to establish 1) Krasnoff's liability under the Note and the Agreement, and 2) the Trust's ratification of TERI as the named plaintiff in the action under Rule 17(a).

In light of the Trust's ratification of TERI's status as the named plaintiff, and in the absence of any argument by Krasnoff challenging the trial court's conclusion as to the question of his breach of either the Note or the Agreement, we find no error and accordingly affirm the trial court.

Affirmed.

Baker, J., and Mathias, J., concur.